### A. W. NELSON *v.* J. B. WELLS AND C. H. HEATH.

#### *Contract. Guaranty.*

B. sold certain property to W., taking W's notes therefor, signed by W. and by H. as surety, agreeing that if W. should sell the property, the indebtedness might be transferred to his purchasers. W. sold the property to L. and E., they agreeing to assume his indebtedness. B. met the parties pursuant to a notice from S. W., who acted in that matter as agent for W., and was asked to transfer the debt. He suggested that as it would take some time to compute the notes, it would be as well for L. and E. to assume the debt by writing on the notes themselves, to which all assented, whereupon L. and E. wrote on the back of each note, "We hereby assume and agree to pay this note," and dated and signed the same. S. W. then understood that L. and E. had assumed the debt absolutely, and that the signers of the notes were relieved from further liability. B., when afterwards inquired of by the defendants, said, in effect, that the defendants need have no concern, as the debt was that of other parties. *Held*, that the undertaking of L. and E. was absolute; and that as the contract to substitute the indebtedness of L. and E. for that of H. and W. was executed in a manner satisfactory to B., H. and W. were relieved from all liability on account of the original indebtedness.

ASSUMPSIT on promissory notes. Trial by the court, March Term, 1878, REDFIELD, J., presiding.

It appeared that the notes were given by the defendant Wells to F. T. Bridgman, for certain stage property, and were signed by the defendant Heath as surety, at the instance of said Wells and his father, Solomon Wells, who had since died ; that Solomon Wells gave Heath a bond of indemnity for so signing the notes, which Heath never presented as a claim against the estate of Solomon Wells, as he supposed that his liability on the notes had ceased ; that at the time Wells purchased the property, Bridgman told him that if he should sell the property to responsible parties the indebtedness might be transferred to his purchasers ; that at some time prior to February 12, 1870, the defendant Wells sold the property to B. J. Lance and Ferdinand Evans, they agreeing to assume and pay the notes in suit, and that, with the purpose to have the indebtedness shifted pursuant to that understanding, Solomon Wells, acting as the agent of his son, gave Bridgman notice to meet him at Cabot, where Evans and Lance lived, on February 12 ; that all the parties accordingly met there on that day ; that after some matters of settlement between Wells and Lance and Evans had been attended to, they applied to Bridgman to transfer the indebtedness evidenced by the notes to Lance and Evans and cancel the notes ; that it was growing late, and Bridgman suggested that it would take some time to compute the notes, and that it might be as well for Lance and Evans to assume the debt by writing on the notes themselves, to which they assented ; whereupon Lance and Evans signed a writing on the back of each of the notes as follows :

Cabot, Feb. 12, 1870. We hereby assume and agree to pay this note.

It appeared further that Lance and Evans were then responsible for the amount in question. The court did not find any fraudulent design on the part of any one in doing the business as it was done ; but did find that ·Solomon Wells understood and believed that the signers of the notes were no longer liable, that the debt was absolutely assumed by Lance and Evans, and that defendants Wells and Heath were relieved from further liability. The court also found that Bridgman, when afterwards inquired of by the defendants, said that they need have no concern, as the debt was that of other parties, or words to that effect ; but did

not find any specific agreement that Bridgman should cancel the defendants' names on the notes.

The plaintiff seasonably objected to the admission of parol testimony to prove any agreement at the time the notes were assumed by Lance and Evans other than the written one ; but it was admitted. It was not claimed that the plaintiff stood in any better position than he would have been if the action had been brought in Bridgman's name.

The court rendered judgment, *pro forma*, for the plaintiff for the amount of the notes less the indorsements and specified payments ; to which the defendants excepted.

*S. C. Shurtleff* and *Heath & Carleton*, for the defendants.

The agreement was on sufficient consideration, and is a defence to the notes. *Britton* v. *Bishop*, 11 Vt. 70 ; *Camp* v. *Page*, 42 Vt. 739 ; *Martineau* v. *May*, 18 Wis. 59.

The evidence showing what transpired at the time Lance and Evans endorsed the notes tended to show an independent agreement between Wells and Bridgman, and not to contradict nor to vary the writing on the notes.

Bridgman is estopped from setting up the notes against the defendants, because he has misled them.

*H. W. Heaton* and *J. A. Wing*, for the plaintiff.

Heath and Wells were not discharged. Lance and Evans were mere guarantors.

The doctrine of estoppel does not apply to the assurances of Bridgman. It is not found that the defendants relied on them, or did or omitted to do anything on account of them. *Strong* v. *Ellsworth*, 26 Vt. 366 ; *White* v. *Langdon*, 30 Vt. 599 ; *Wooley* v. *Edson*, 35 Vt. 214.

The opinion of the court was delivered by

ROYCE, J. The notes declared upon were given by the defendant Wells, and defendant Heath as surety, to one Bridgman in payment for certain stage property purchased by Wells of Bridgman. It is conceded that the notes are subject to all the de-

fences that might have been made to them if the suit had been brought in the name of Bridgman. The defendants claim that they are discharged from all liability in consequence of what transpired on the 12th of February, 1870. Prior to that time Wells had sold the stage property for which the notes were given to Lance and Evans, upon the agreement that they should assume and pay the notes given to Bridgman. On that day the parties met at Cabot, to consummate that agreement. Bridgman agreed with Wells at the time he sold the property to him that if he should sell it to responsible parties he would transfer the indebtedness of Wells to such purchasers. And it will be observed that no objection appears to have been made to the right of the defendants to show that agreement. Wells did sell to responsible parties, and Bridgman must have known that the object and purpose of the meeting at Cabot was to effect the transfer of the indebtedness of Wells to Lance and Evans. And in pursuance of that design Lance and Evans, upon the suggestion of Bridgman, who then held the notes, endorsed on each of them, " We hereby assume and agree to pay this note." It was understood and believed by Solomon Wells, who was present and acting as the agent of J. B. Wells, that the indebtedness of J. B. Wells and Heath was absolutely assumed by Lance and Evans, and that they were relieved from all further liability. It is not found expressly how Bridgman understood the matter, but from his conduct at the time, in connection with his previous agreement and the fact that he afterwards told the defendants, when inquired of, that it was the debt of other parties, or words of similar import, it may fairly be inferred that he understood the matter just as Solomon Wells did. It remains, then, to be determined whether, by virtue of what transpired upon that occasion, the defendants are relieved from liability upon the notes.

Counsel in argument have claimed that the undertaking of Lance and Evans was in law a guaranty of the payment of the notes by Heath and Wells, and that all evidence of the intent and understanding of the parties limiting, controlling or explaining it was inadmissible. But we understand that Lance and Evans, by assuming in writing to pay the notes, undertook abso-

lutely to pay them. Their undertaking was not conditioned upon anything that Wells and Heath might do or neglect to do. Their endorsement upon the notes was equivalent to an express promise to pay to Bridgman the amount that might be due upon them. Bridgman took and retained the evidences of their promise and undertaking, and the evidence which was received explanatory of the understanding of the parties at the time the endorsement of Lance and Evans was made upon the notes, and the object of Bridgman in taking and retaining said indorsements, was properly received. The transaction was in legal effect the substitution of a security which Bridgman had agreed to receive in lieu of the notes, and it would seem to have been his fault that the security was not made available. Although contracts to substitute one security for another may not be enforceable as long as they are executory, when executed they are as binding upon parties as any other contracts ; and the contract by Bridgman to substitute Lance and Evans as his debtors in lieu of Heath and Wells having been executed in a manner that was satisfactory to Bridgman, the defendants were relieved from any further liability on account of the original indebtedness.

Judgment reversed, and judgment for defendants for their costs.